# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION
# IN ADMIRALTY

| | | |
|---|---|---|
| St. Paul Fire and Marine Insurance Company as subrogated underwriter of Ceres Marine Terminals, Inc., | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No.: 2:08-1623-PMD |
| Yang Ming (America) Corporation and Yang Ming Marine Transportation Corporation, | ) ) ) ) | |
| Defendant and Third-Party Plaintiffs, | ) ) ) | **ORDER** |
| v. | ) ) | |
| Cosco North America, Inc., | ) ) | |
| Third-Party Defendant. | ) ) ) | |

This matter is before the court upon Third-Party Defendant Cosco North America, Inc.'s Motion for Summary Judgment. For the reasons set forth herein, the court grants its motion.

## BACKGROUND

Defendants and Third-Party Plaintiffs Yan Ming (America) Corporation and Yang Ming Marine Transportation Corporation ("collectively "Yang Ming") seek indemnification from Third-Party Defendant Cosco North America, Inc. ("Cosco") for any monetary damages it must pay Plaintiff St. Paul Fire and Marine Insurance Company because of a chemical spill that occurred at the South Carolina State Ports Authority's Columbus Street Terminal in Charleston. Yang Ming was a slot charterer of space aboard a container ship, and during a port of call, Yang

Ming's stevedore, Ceres Marine Terminals, Inc., discharged a shipping container and placed it on a chassis provided by Yang Ming. At some point, the chassis collapsed, and the container fell on its side, causing its cargo, a mildly hazardous chemical, to leak out onto the container yard. As the liability insurer for Ceres Marine Terminals, Inc., Plaintiff St. Paul Fire and Marine Insurance Company ("St. Paul") claimed it spent $62,211 cleaning up the spill, and it filed suit against Yang Ming in an effort to recoup this cost. St. Paul and Yang Ming have settled their dispute, and Yang Ming now seeks indemnification from Cosco, as the owner of the chassis.

## **LEGAL STANDARD FOR SUMMARY JUDGMENT**

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The judge is not to weigh the evidence but rather must determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123–24 (4th Cir. 1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "obligation of the nonmoving party is 'particularly strong when the nonmoving party bears the burden of proof.'" *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting *Pachaly v. City of Lynchburg*, 897 F.2d 723, 725 (4th Cir. 1990)).

# ANALYSIS

In its third-party claim, Yang Ming alleges that it is entitled to indemnification from Cosco, either contractually, "[p]ursuant to the South Atlantic Chassis Program Limited Liability Company Operating Agreement," or equitably. (Answer and Third-Party Compl. ¶ 31.) The South Atlantic Chassis Program Limited Liability Company Operating Agreement ("Operating Agreement") established a pool of chassis provided by various contributors, including Yang Ming and Cosco, in December of 2001. Pursuant to the Operating Agreement, each contributor retains ownership of any chassis it contributes, but all of the members of the limited liability company are entitled to use any chassis out of the entire pool. In this case, Cosco owned the allegedly defective chassis that Yang Ming used to transport the shipping container. Relevant to the issue of indemnification, the Operating Agreement provides:

**Section 7.8 INDEMNIFICATION.**

(a) Primary – Chassis User.

It is the intention of the Contributors that ***the user of a Pool Chassis shall be responsible for all damage and injury resulting from, relating to, or occurring during its use of the Pool Chassis. Accordingly, each Contributor using a Pool Chassis shall indemnify the Manager and each of the other Contributors*** (including, but not limited to, the contributor owning the Pool Chassis) as well as their officers, agents and employees as well as all claiming by and through them ***for any claims, demands, liabilities and expenses (including reasonable attorney's fees) resulting from***: (a) bodily or other injury to any person, including injury resulting in death; or (b) ***damage to property, when such injury or damage arises out of, relates to and/or occurs during such Contributor's use of a Pool Chassis*** or (c) breach of this Agreement. For purposes hereof, "use of" of a chassis shall have the same meaning as utilization of a chassis as provided in Section 7.3(d).

> (b) Secondary – Chassis Owner
>
> (i) Except as provided herein, ***each Contributor agrees to defend, indemnify and hold harmless*** the Manager and ***all other Contributors***, their agents, servants and employees as well as claiming by or through the Manager and the other Contributors ***from and against any and all claims***, demands, actions, suits, proceedings, costs, expenses, ***damages and liability***, including attorney's fees, ***arising out of or relating to the respective Contributor's chassis*** as well as the presence of the respective Contributor's agents, servants or employees at the Terminals, or breach of this Agreement.
>
> (ii) The provisions of this Subsection (b) ***shall be supplemental to the requirement of indemnification provided for in Subsection (a)*** and ***shall only apply*** with regard to claims, demands, liabilities and expenses which would be subject to indemnification pursuant to Subsection (a) ***if the Contributor using the Pool Chassis fails to indemnify as provided in Subsection (a)***.

(Cosco Mot. for Summ J. Ex. A) (emphasis added). This language clearly contemplates that the user of the chassis, as opposed to its owner, assumes responsibility for any property damage that occurs during its use of the chassis. The owner of the chassis is only secondarily liable; therefore, it only has to honor its duty to indemnify when the chassis user fails to indemnify the Company's Manager and other member-contributors for liability arising out of the use of the chassis. Although Yang Ming alleged in its Complaint that this language in the Operating Agreement created its contractual right to indemnification, it asserts in its memorandum in opposition that "the ultimate question of indemnity must be decided under the terms of the Management Agreement, not the Operating Agreement," as "the ultimate allocation of loss for defective maintenance and repair of chassis in the pool is simply not addressed by the Operating Agreement." (Yang Ming Resp. in Opp. at 4.) Since Yang Ming no longer pursues relief pursuant to the terms of the Operating Agreement, the court does not address the language contained therein.

The Management Agreement was entered into between the South Atlantic Chassis Program, L.L.C. ("Company"), the company formed by the Operating Agreement, each of the members of the Company, and the Manager of the Company on January 1, 2002. The Management Agreement sets forth the duties of the Manager of the Company, which includes the Manager's duty to supervise the maintenance and repair work of the chassis. Yang Ming contends that since St. Paul alleged defective maintenance and repair of the chassis, the issue of indemnification must be determined using the language of the Management Agreement and not that of the Operating Agreement. The Management Agreement states:

**Article 4: INDEMNIFICATION**

4.1. <u>Contributor Indemnity</u>

The respective Contributors agree to defend, indemnify and hold harmless the Company and the Manager, its agents, servants and employees from and against any and all claims, demands, actions, suits, proceedings, costs, expenses, damages and liability, including attorney's fees, arising out of, or resulting from the performance of this agreement, including without limitation, (a) the presence of the respective Contributor's chassis, agents, servants or employees at the Terminal, or (b) the operation of the respective Contributor's chassis off the Terminal, unless such claims, demands, actions, suits, proceedings, costs, expenses, damages, or liability arise out of, or are a result of, the Manager's breach of this Agreement or the negligent or intentional acts or omissions of Manager, its agents, servants, or employees.

4.2. <u>Manager Indemnity</u>

Manager agrees to defend, indemnify and hold harmless each of the contributors, their agents, servants and employees from and against any and all claims, demands, actions, suits, proceedings, costs, expenses, damages and liability, including attorney's fees, arising out of or resulting from breach of this Agreement or negligent or intentional acts or omissions of Manager or Manager's agents, servants or employees in the performance of this Agreement.

(Yang Ming Resp. in Opp. Ex. 2.) According to Yang Ming, section 4.1 cited above "places the burden of defense and indemnity on the contributor of the chassis, not the user." (*Id.* at 3.) The court disagrees.

"South Carolina follows an objective contract interpretation rule, meaning that if the language of a contract is perfectly plain and capable of legal construction, such language determines the force and effect of the instrument. Words cannot be read into a contract which impart intent wholly unexpressed when the contract was executed." *Catawba Indian Tribe of S.C. v. City of Rock Hill*, 501 F.3d 368, 372 (4th Cir. 2007) (internal quotations and citations omitted). When the language of the contract is unambiguous, the court must give effect to its ordinary, natural, plain meaning. *Howe v. First Tennessee Nat. Corp.*, 256 F. App'x 586 (4th Cir. 2007) (citation omitted). Section 4.1 clearly and unambiguously states that the contributors to the pool will indemnify the Company and Manager for any liability they face as a result of the presence of the contributor's chassis at the Terminal, but it does not require the contributors to indemnify each other as Yang Ming suggests. Therefore, the court grants Cosco's Motion for Summary Judgment.

Yang Ming may be able to seek indemnification from the Manager of the Company, pursuant to section 4.2. That section, quoted above, requires the Manager to indemnify the contributors for any damages resulting from breach of the Management Agreement. As already discussed, section 1.2(b)(vii) of the Management Agreement requires the Manager to supervise the maintenance and repair work on behalf of the Company, and since St. Paul claims that the chassis was in a damaged condition, the Management Agreement may offer relief to Yang Ming in that respect, but not against Cosco. To the extent Yang Ming asserts that "[a]t a minimum, the competing indemnity clauses and the purposes behind them are ambiguous, which precludes summary judgment at this stage," the court disagrees. Moreover, Yang Ming elected not to seek relief pursuant to the terms of the Operating Agreement in its memorandum in opposition;

therefore, it did not explain how the indemnification provisions of the separate agreements created an ambiguity.

Lastly, Cosco also asks the court to find for it as a matter of law as to Yang Ming's claim for equitable indemnification. Cosco argues that nothing about their relationship as co-contributors to a pool chassis requires the court, in equity, to modify the parties' existing contractual arrangement. Yang Ming did not oppose this argument. Because both parties entered into an agreement that created a common pool for their chassis and because the Manager of the pool agreed to supervise the maintenance of the chassis, the court agrees with Cosco and grants its motion for summary judgment as to Yang Ming's claim for equitable indemnification.

## **CONCLUSION**

Based on the foregoing, it is **ORDERED** that Third-Party Defendant Cosco North America, Inc.'s Motion for Summary Judgment is **GRANTED**.

_____
PATRICK MICHAEL DUFFY
United States District Judge

**November 3, 2009**
**Charleston, SC**